UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DARIUS QUINCY HODGES,<br><br>Defendant. | Criminal Action No. 23-73-18 (CKK) |

**MEMORANDUM OPINION**
(January 16, 2024)

Defendant Darius Quincy Hodges is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills of fentanyl. On November 9, 2023, Magistrate Judge G. Michael Harvey of this jurisdiction ordered Defendant to be temporarily detained without bond. On November 16, 2023, Magistrate Judge Robin M. Meriweather, also of this jurisdiction, held a detention hearing for Defendant and granted the Government's oral motion to detain Defendant pending trial.

Before the Court is Defendant's [208] Motion for Review of Detention ("Motion" or "Mot."). Defendant requests that the Court review the magistrate judge's detention order and release him on pretrial conditions. Mot. at 1. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [208] Motion for Review of Detention.

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Review of Detention, ECF No. 208;
- The Government's Opposition to Defendant's Motion for Review of Detention ("Gov't's Opp'n"), ECF No. 217, and exhibits therein; and
- Defendant's Reply to Government's Opposition to Defendant's Motion for Review of Detention and Request for Hearing ("Def.'s Reply"), ECF No. 230, and exhibits therein.

1

### I. BACKGROUND

#### A. Procedural Background

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 (sealed). Additional defendants were indicted on April 26 and May 18, 2023. ECF No. 25 (sealed); ECF No. 48 (sealed). On November 6, 2023, a grand jury returned a third superseding indictment, adding, among others, Defendant Hodges. ECF No. 134 (sealed). On November 17, 2023, a grand jury returned a fourth superseding indictment in this matter. ECF No. 168 (sealed). Following the third superseding indictment, Magistrate Judge Meriweather issued an arrest warrant for Defendant, which was executed on November 9, 2023. ECF No. 138. That same day, Defendant appeared before Magistrate Judge Harvey, who granted the Government's oral motion for temporary detention and held Defendant without bond. *See* Nov. 9, 2023 Minute Entry. On November 16, 2023, Defendant appeared for a detention hearing before Magistrate Judge Meriweather, who granted the Government's oral motion to detain Defendant pending trial. *See* Nov. 16, 2023 Minute Entry.

Defendant subsequently filed the pending motion on December 14, 2023, requesting this Court to review the magistrate judge's detention order and set conditions of release. ECF No. 208. The Government opposes Defendant's motion, filing its opposition on December 29, 2023. ECF No. 217. After requesting and obtaining an extension of time, Defendant filed his reply on January 12, 2024. ECF No. 230.

#### B. Factual Allegations

In its opposition, the Government details the allegations against Defendant, including numerous messages exchanged between Defendant and various co-defendants in this case. Broadly, the Government alleges that Defendant "obtained thousands of potentially deadly pills

2

for redistribution in the D.C. area." Gov't's Opp'n at 24.

To support its claim, the Government recounts purported text messages between Defendant and co-Defendant Valdez. *Id.* at 14–15. According to the Government, the below messages were recovered from Valdez's phone, demonstrating Defendant's illicit dealing in vast quantities of lethal drugs. *Id.* at 14. For instance, on December 15, 2022, Defendant (who appeared as "Brick" in Valdez's saved contacts) messaged Valdez, stating: "Yes I want a couple bro nd ima cash you out today." *Id.* at 15. Valdez responded: "Okay !" and then "Sup pa." *Id.* Defendant responded with "Boat." *Id.*



*See id.* The Government proffers that the above exchange illustrates that Defendant "asked for

3

pills," "said he had money," and then "specified that he wanted 1,000 pills (i.e., a 'boat')." *Id.* at 14.

In addition to dealing with Valdez, Defendant Hodges maintained a close relationship with co-Defendant Ramirez. *See id.* at 16. Specifically, the Government proffers that Defendant obtained illicit pills from Ramirez "by the thousands." *Id.* To support this claim, the Government appends an image depicting an Instagram conversation purportedly between Defendant and Ramirez, in which Ramirez informed Defendant that he can obtain "boats" (i.e., thousands of pills) for Defendant in exchange for $3,500. *Id.* at 16–17.

```
Author  rulas94_ (Instagram: 28340832415)
Sent    2021-01-07 19:11:03 UTC
Body    Okay bet bro lmk what he say I can get the boats for you for
        3,500$

Author  rulas94_ (Instagram: 28340832415)
Sent    2021-01-07 19:11:08 UTC
Body    I'm eating already

Author  balloutbrix (Instagram: 143694548)
Sent    2021-01-07 19:11:40 UTC
Body    Nd I'm waiting for my Afghan guy to come back frm LA for these
        other joints

Author  balloutbrix (Instagram: 143694548)
Sent    2021-01-07 19:12:00 UTC
Body    If you wanna check out some Za you can tap it with him it's the
        same person frm last time

Author  rulas94_ (Instagram: 28340832415)
Sent    2021-01-07 19:31:10 UTC
Body    Okay bet bro
        Ima tap in
```

*See id.* at 17. The Government then explains that Defendant received the illicit drugs either: (1) in-person in Los Angeles; or (2) through the mail. *See id.* at 15, 17. First, the Government proffers that Defendant's "flight records to Los Angeles" demonstrate one of the methods for obtaining the pills: an "in-person purchase of bulk quantities of pills and subsequently smuggling them back to the East Coast." *Id.* at 15. The Government notes that Defendant flew to LAX "at least ten times" over the "life of the conspiracy." *Id.* Next, the Government appends an image of another Instagram conversation, purportedly between Defendant and Ramirez, which demonstrates that

4

Defendant would also receive the drugs through the mail. *See id.* at 17. For instance, on July 5, 2022, Ramirez sent Defendant "a photo of a USPS receipt reflecting a shipment to Suitland, MD." *Id.* That same day, Defendant asked for a picture of "beans." *Id.* at 18. The Government states that Ramirez responded with a "video of what appears to be unidentified pills of various shapes, sizes, and colors (thus suggesting 'beans' means 'pills')." *Id.*





*See id.* at 17–18.  The Government claims that the pills in the video sent by Ramirez "may have contained fentanyl," based on a comparison of what "rainbow fentanyl pills" appear as according to a news story.  *Id.* at 19–20.



*See id.* at 20.  On July 10, 2022, Defendant asked Ramirez to "Send me those lol," and then stated "Lol them joints cool bro."  *Id.* at 21.  Then, on July 13, 2022, Defendant stated, "I got myself a

6

lane now in VA as of today for these." *Id.*



*See id.* The Government claims that the above interaction demonstrates that Defendant "had a way to redistribute pills sent to him by Ramirez." *Id.* at 20.

Finally, the Government states that Defendant also had a close relationship with co-Defendant Bussie. *See id.* at 24. The Government appends images of text communications purportedly between Defendant and Bussie to support its claims. *Id.* at 24. In those communications, Bussie asked Defendant for "joints," which the Government proffers means "pills." *Id.*



*See id.*

## II.   LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b).  The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly."  18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act permits pretrial detention in only "carefully defined circumstances."  *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987).  A detention hearing must be held only if a case

involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the

9

requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III. DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing requires Defendant Hodges' detention pending trial.

**A. Legal Principles**

As a threshold matter, the Court shall address the proper standard to apply at this stage of proceedings. As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b). Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the

court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or Defendant's appearance at trial. Accordingly, the Court orders that Defendant shall remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### B. Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, a grand jury has found probable cause that Defendant was engaged in a conspiracy to distribute more than 400 grams of fentanyl that ran from August 2020 until the present day, and the Government has presented evidence that Defendant has trafficked *thousands* of grams of fentanyl. *See* Gov't's Opp'n at 15, 17–19, 21, 24. The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community.

To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH). The Court finds that Defendant has failed to do so here. He argues, for example, that the allegations against him, in conjunction with the "limited discovery," demonstrate that he had a relatively minor role in the alleged conspiracy. *See* Mot. at 2 ("Although it is alleged

11

that Mr. Hodges did purchase fentanyl from a west coast source for himself, this appears to have been *at most* sporadic and involving far, far smaller quantities than are alleged against some of the co-conspirators.") (emphasis in original); *see also id.* ("Mr. Hodges relative role with respect to the actual distribution appears to place him at the low end of the discernible spectrum of culpability."). Defendant also notes that he is "not accused of possessing a firearm at any time, let alone in connection with the conspiracy," nor was any "contraband [] found at his residence or on his person at the time of his arrest." *Id.*

However, picking apart the Government's alleged evidence in support of its argument that Defendant would be a danger and/or a flight risk is not the same as offering credible evidence that he would not be a danger and/or a flight risk. In other words, Defendant challenges the Government's proffered evidence, but fails to offer any counterevidence to refute it. *See, e.g.,* Def.'s Reply at 4 ("Without conceding the government's assertions, but assuming the truth at this stage, Mr. Hodges purchase of pills with a detectable amount of fentanyl does not implicate him in the conspiracy."). Notably, while Defendant notes that the allegations against him suggest that he dealt with "far, far smaller quantities than are alleged against some of the co-conspirators," Mot. at 2, Defendant fails to acknowledge that the Government is still alleging that he trafficked *thousands* of grams of fentanyl, *see* Gov't's Opp'n at 16, 23, 24. And, according to the Government, Defendant was selling the fentanyl pills "disguised and passed off as legitimate oxycodone." Gov't's Opp'n at 23.

The Court concludes that the nature and circumstances of the offense weigh in favor of detention. Defendant is charged with conspiring to distribute and possessing with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846. This charge carries a ten-year mandatory minimum sentence, with a maximum

of life. 21 U.S.C. § 841(b)(1)(A)(vi). As the Government puts it, "it is common knowledge that fentanyl kills," Gov't's Opp'n at 22; this investigation began with the overdose death of a D.C. resident who appears to have obtained her drugs through this conspiracy, *id.* at 3–4. "Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the defendants in this action, but vast distribution across the United States. Therefore, Defendant's "alleged participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *See id.*

Moreover, the additional defendants in the third superseding indictment have been ordered detained pending trial as well. *See, e.g.*, ECF No. 167 (vacating detention order as to Defendant Arana); ECF No. 182 (vacating detention order as to Defendant under seal); ECF No. 184 (vacating detention order as to Defendant Allen); ECF No. 191 (vacating detention order as to Defendant Briones). In each of these cases, there was sufficient evidence of fentanyl drug trafficking to warrant and support their detention. Releasing this particular defendant, who is a large-scale fentanyl trafficker in the District of Columbia, would be contrary to the other detention orders in effect. Therefore, the first factor weighs in favor of detention.

### C. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. The Government presents text messages between Defendant and other co-defendants in this case, including Defendants Valdez, Ramirez, and Bussie, substantiating its claim that Defendant did in fact deal with large quantities of counterfeit drugs. *See* Gov't's Opp'n at 15, 17–19, 21, 24. Furthermore, the Government proffers that Defendant travelled to California on numerous

13

occasions to purchase large quantities of the illicit drugs and subsequently "smuggl[ed] them back to the East Coast." *Id.* at 15.

Defendant's argument that he had "legitimate business interests and dealings in California in the fashion and recording industries" is not persuasive. Mot. at 2. Defendant does not provide any evidence, let alone credible evidence, regarding his alleged business interests in California. Nor does Defendant provide any evidence that the purported text exchanges between him and the other co-defendants in this case were not in fact between him and them. *See generally id.*; *see generally* Def.'s Reply. As the Government states that the communications were extracted from the co-defendants' telephones and social media accounts, the Court can presume, in its discretion, that the Government can produce evidence at trial that Defendant is the correspondent in the messages at issue. *Cf. United States v. Bell*, 209 F. Supp. 3d 275, 279 (D.D.C. 2016) (JEB).

In all, the Court finds that the weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168–69. Given the evidence to date, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK).

**D. History and Characteristics of the Defendant**

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

Defendant's relatively serious criminal history further weighs in favor of pretrial detention. According to his Pretrial Services Report, Defendant has twelve arrests and two prior convictions. *See* Pretrial Services Report ("PSR"), ECF No. 144. One conviction involved a controlled

substance offense—the distribution of cocaine in the District of Columbia—and the other conviction involved a robbery in 2013. *See id.* at 3; Gov't's Opp'n at 26.

On the other hand, Defendant notes that he has had no "fresh or even recent conviction," and that his last offense took place in 2012, which resulted in the 2013 conviction. Mot. at 3. Furthermore, Defendant appears to have family and community ties in the District of Columbia. *See id.* (stating Defendant "spends most of his time" with his infant child, fiancé, and older children); *id.* (stating Defendant has "lived in the D.C. area his entire life").

In all, given Defendant's proclivity for possessing controlled substances, the Court finds that this factor weighs in favor of detention.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally). Particularly so given the vast amount of drugs at issue here. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). Moreover, the significant statutory penalties Defendant faces provide him with a strong incentive to flee.

Defendant maintains that he is not a danger to the community. Def.'s Reply at 6. As such, Defendant proposes that he be released on the condition that he reside in his current home, which is owned by his godmother. Mot. at 4. Defendant makes this request so that he may continue

15

caring for his children and helping his fiancé. *Id.* at 3. Defendant's fiancé and godmother have both agreed to serve as third-party custodians. *Id.* at 4. Defendant further consents to GPS monitoring and drug testing and treatment. *Id.*

However, the Government has provided strong evidence indicating that Defendant knowingly and intentionally trafficked counterfeit pills in the *thousands*. *See generally* Gov't's Opp'n. Again, "it is common knowledge that fentanyl kills." Gov't's Opp'n at 22. Overall, the Court's concern regarding the safety of the community is not alleviated. Therefore, this factor also weighs in favor of detention.

*   *   *

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can address the threat of danger he poses to the community in the District of Columbia or mitigate his risk of flight. Notably, Defendant's Pretrial Services Report states: "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community." ECF No. 144 at 1. Here, the Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and the substantial statutory penalties he is facing. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

### IV.   CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial. 18 U.S.C.

§ 3142(e)(1).  As such, the Court **DENIES** Defendant's [208] Motion for Review of Detention.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** January 16, 2024

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge